IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| TYVORIUS V. KEY, | : | |
| Plaintiff, | : | |
| | : | |
| vs. | : | CIVIL ACTION 20-00287-JB-N |
| | : | |
| ALABAMA DEPT. OF CORRS. CERT | : | |
| TEAM MEMBERS, *et al.*, | : | |
| Defendants. | : | |

**REPORT AND RECOMMENDATION**

Plaintiff Tyvorius Key, an Alabama prison inmate proceeding *pro se* and *in forma pauperis*, filed a complaint under 42 U.S.C. § 1983. This action has been referred to the undersigned for appropriate action pursuant to 28 U.S.C. § 636(b)(1)(B) and S.D. Ala. GenLR 72(a)(2)(R). This matter is before the Court on Defendants' motion for summary judgment.[1] (Doc. 31). For the reasons discussed herein, it is ordered that this motion be granted, in part, and denied, in part, with summary judgment being **DENIED** as to the Eighth Amendment **excessive force claim against Defendants Smith and Thomas**, and summary judgment being **GRANTED** as to all **remaining claims and Defendants**.

### I.     BACKGROUND AND FACTUAL ALLEGATIONS.[2]

Plaintiff Tyvorius Key claims he was subjected to excessive force during a CERT team shakedown on July 19, 2018, while housed at Holman Correctional Facility ("Holman" or "the prison"). (Doc. 5 at 4). He alleges the CERT team entered B-Dorm between 3:00 p.m. to 5:00 p.m., ordering the inmates to lie face down on their beds with their hands on their heads. (*Id.*).

---

[1]     The Court converted the Defendants' Answers and Special Reports to a motion for summary judgment. (Docs. 28, 29).

[2]     The "facts, as accepted at the summary judgment stage of the proceedings, may not be the actual facts of the case." *Priester v. City of Riveria Beach*, 208 F.3d 919, 925 n.3 (11th Cir. 2000).

Key claims he was fully compliant with the CERT team's orders but was repeatedly struck in the back with a night stick, for no reason. (*Id*.). He claims that Officer Thomas jabbed him in the left side of his ribs with a night stick and that he was beaten for 15 to 20 minutes. (*Id*.). Thereafter, Key alleges he was denied medical care, left on his bed in pain. (*Id*.). Key asserts that with the assistance of other inmates, he "crawled" to the prison wall phone and called his mother to inform her of "what just took place an[d] happen . . . and [he] also told her to call Holman prison an get them to take [him] to the health care unit." (*Id*.). Key's mother then contacted Warden Raybon at the prison and, within 30 minutes, Key alleges he was escorted by officers to the health care unit and that due to the severity injuries inflicted, he was taken to the local community hospital for further treatment. (*Id*.). Key alleges that a body chart was completed for him in the health care unit, and he received a double mat profile before being taken to the free world hospital. (*Id*.).

> Key asserts the following Eighth Amendment claims against the defendants:
>
> Key alleges that Warden Stewart is responsible as the warden to ensure the safety of inmates and claims she is liable for failing to protect Key, failing to intervene, and deliberate indifference to a serious medical need. (*Id*. at 5).
>
> Key alleges that Captain Smith and Lieutenant Thomas, members of the CERT team, used excessive force against him, beating him and then denying him medical care. (*Id*.).
>
> Key is seeking $150,000 in compensatory damages, jointly and severally, and an additional

$150,000 in punitive damages against each defendant. (*Id*. at 7).

Defendants have answered the complaint and submitted a special report denying the allegations asserted against them. (*See* Docs. 28, 29). While acknowledging that the CERT team conducted an institutional search at Holman on July 19, 2018, Defendants Smith and Thomas strictly deny using any force against Key (or observing force used against Key), and Defendant Stewart avers she was not present at Holman at the time of the incident. (Doc. 29 at 3). Defendants

rely on submitted medical records in support of their positions, namely that no sick call request was filed on July 19, 2018 (*Id*. at 11), as well as personal affidavits. (*See* Docs. 29-1; 29-2; 29-4).

After review of the pleadings, the Court ordered that Defendants' Answer, Special Report, and exhibits (Docs. 28, 29, 29-1, 29-2, 29-3, 29-4) be treated as a motion for summary judgment. (Doc. 31). Key has responded to the motion, reasserting the claims contained in his complaint and challenging summary judgment. (Doc. 39).

Accordingly, this motion for summary judgment is now ripe for consideration.

## II.     STANDARD OF REVIEW

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 247-248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986) ("[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact.") (emphasis in original); *Garczynski v. Bradshaw*, 573 F.3d 1158, 1165 (11th Cir. 2009) ("[S]ummary judgment is appropriate even if 'some alleged factual dispute' between the parties remains, so long as there is 'no genuine issue of material fact.'") (emphasis in original) (citation omitted).

The party asking for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the 'pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). The movant can meet this burden by presenting evidence showing there is no dispute of material fact, or by

showing or pointing out to the district court that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. *Id*. at 322-24, 106 S. Ct. 2548.

> Once the moving party has met its burden, Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by [its] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.' " To avoid summary judgment, the nonmoving party "must do more than show that there is some metaphysical doubt as to the material facts." On the other hand, the evidence of the nonmovant must be believed and all justifiable inferences must be drawn in its favor.

*ThyssenKrupp Steel USA, LLC v. United Forming, Inc.*, 926 F. Supp. 2d 1286, 1290 (S.D. Ala. 2013) (internal citations omitted).

The requirement to view the facts in favor of the nonmoving party extends only to "genuine" disputes over material facts. *Garczynski*, 573 F.3d at 1165. "A genuine dispute requires more than 'some metaphysical doubt as to material facts.' " *Id*. (citations omitted). A "mere scintilla" of evidence is insufficient; the nonmoving party must produce substantial evidence in order to defeat a motion for summary judgment. *Id*. In addition, "[t]here is no burden upon the district court to distill every potential argument that could be made based upon the materials before it on summary judgment." *Resolution Trust Corp. v. Dunmar Corp.*, 43 F.3d 587, 599 (11th Cir. 1995). More importantly, where "opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380, 127 S. Ct. 1769, 167 L. Ed. 2d 686 (2007); *see also Logan v. Smith*, 439 F. App'x 798, 800 (11th Cir. 2011) ("In cases where opposing parties tell different versions of the same events, one of which is blatantly contradicted by the record—such that no reasonable jury could believe it—a court should not adopt the contradicted allegations.").

### III.   DISCUSSION AND ANALYSIS

**A.  Immunity Defenses.**

To the extent Key is proceeding against the correctional officer defendants in their official capacities, those claims fail. The Eleventh Amendment, which specifically prohibits suits against "the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State," has long been held to apply "equally to suits against a state brought in federal court by citizens of that state." *Harbert Int'l, Inc. v. James*, 157 F.3d 1271, 1277 (11th Cir. 1998). "The state need not be formally named as a defendant for the amendment to apply; state officials sued in their official capacity are also protected by the amendment." *Id*. (citing *Kentucky v. Graham*, 473 U.S. 159, 166-67, 105 S. Ct. 3099, 87 L. Ed. 2d 114 (1985)).  Accordingly, the correctional officer defendants in this action, all of whom were employed by the State of Alabama Department of Corrections at the time of the incidents alleged in the complaint, are immune from suit in their official capacities. *See Parker v. Williams*, 862 F.2d 1471, 1476 n.4 (11th Cir. 1989), *overruled on other grounds in Turquitt v. Jefferson Cnty.*, 137 F.3d 1285 (11th Cir. 1998) ("[S]uits against an official in his or her official capacity are suits against the entity the individual represents."). Thus, the officer defendants, in their official capacities, are entitled to summary judgment as a matter of law.

"Qualified immunity protects government officials performing discretionary functions from suits in their individual capacities unless their conduct violates 'clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Dalrymple v. Reno*, 334 F.3d 991, 994 (11th Cir. 2003) (quoting *Hope v. Pelzer*, 536 U.S. 730, 739, 122 S. Ct. 2508, 153 L. Ed. 2d 666 (2002)).  While there is no doubt that the defendants in this action were acting within their discretionary authority at all times when the acts in question occurred, the Eleventh

Circuit has made clear that the defense of qualified immunity "is not available in cases alleging excessive force in violation of the Eighth Amendment, because the use of force 'maliciously and sadistically to cause harm' is clearly established to be a violation of the Constitution by the Supreme Court decisions in *Hudson* and *Whitley*." *Skrtich v. Thornton*, 280 F.3d 1295, 1301 (11th Cir. 2002) (citation omitted); *see also Harlow v. Fitzgerald*, 457 U.S. 800, 815, 102 S. Ct. 2727, 73 L. Ed. 3d 396 (1982) (Qualified immunity does not extend to an officer who "knew or reasonably should have known that the action he took within his sphere of official responsibility would violate the constitutional rights of the [plaintiff]." (internal quotation marks omitted and alteration in original). As to the remaining claims, officer defendants are entitled to qualified immunity unless Key can show that their conduct violated a clearly established statutory or constitutional right of which a reasonable person would have known. *See Belcher v. City of Foley, Ala.*, 30 F.3d 1390, 1395 (11th Cir. 1994). Therefore, the Court will now address whether this action identifies any constitutional violation.

**B. Claims Under 42 U.S.C. § 1983.**

Plaintiff Key proceeds pursuant to 42 U.S.C. § 1983. "In order for a plaintiff to establish a claim under 42 U.S.C. § 1983, he must prove (1) a violation of a constitutional right, and (2) that the alleged violation was committed by a person acting under the color of state law." *Martinez v. Burns*, 459 F. App'x 849, 850-851 (11th Cir. 2012) (citing *Holmes v. Crosby*, 418 F.3d 1256, 1258 (11th Cir. 2005)). There is no dispute that the named defendants, as employees of the Alabama Department of Corrections, are state actors for purposes of this action. Thus, to establish his asserted claims, Key must establish that the named defendants, personally, acted to deprive him of a constitutional right; here, the Eighth Amendment.

**1. Excessive Force**

The Eighth Amendment's prohibition against cruel and unusual punishment, U.S. Const. amend. VIII, governs the use of force by prison officials against convicted inmates. *Campbell v. Sikes*, 169 F.3d 1353, 1374 (11th Cir. 1999).  In order to establish an Eighth Amendment excessive force claim against the defendants, Key must prove both an objective and subjective component. That is, he must show that the alleged wrongdoing was objectively "harmful enough" to establish a constitutional violation and that the defendants "act[ed] with a sufficiently culpable state of mind; i.e., that they acted maliciously and sadistically to cause harm." *Hudson v. McMillian*, 503 U.S. 1, 7, 112 S. Ct. 995, 999, 117 L. Ed. 2d 156 (1992) (citations omitted); *see also Lumley v. City of Dade City, Fla.*, 327 F.3d 1186, 1196 (11th Cir. 2003) (to satisfy the object conduct, the plaintiff must show the complained of conduct "shocks the conscience").  Both inquiries are contextual, and "the objective harm inquiry is responsive to contemporary standards." *Thomas v. Bryant*, 614 F.3d 1288, 1304 (11th Cir. 2010).  While not every "malevolent touch" by a prison guard amounts to excessive force, a *de minimis* use of force is cognizable under the Eighth Amendment if it is "repugnant to the conscience of mankind." *See Wilkins v. Gaddy*, 559 U.S. 34, 37-38, 130 S. Ct. 1175, 175 L. Ed. 2d 995 (2010) (quotation marks omitted).

"[W]here a prison security measure is undertaken to resolve a disturbance . . . that indisputably poses significant risks to the safety of inmates and prison staff, . . . the question of whether the measure taken inflicted unnecessary and wanton pain and suffering ultimately turns on whether the force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm." *Whitley*, 475 U.S. at 320-21, 106 S. Ct. 1078; *see also Skrtich v. Thornton*, 280 F.3d 1295, 1300 (11th Cir. 2002).  Factors relevant to this determination include the "need for the application of force, the relationship between that need and the amount of force used, the threat reasonably perceived by the responsible

officials, and any efforts made to temper the severity of a forceful response." *Skrtich*, 280 F.3d at 1300. The absence of injury is one factor to be considered in determine whether or not force used was conceivably necessary and may indicate the amount of force used. *Wilkins*, 559 U.S. at 37, 130 S. Ct. 1175. Once the need for force ceases, any continued force applied can constitute an Eighth Amendment violation. *Williams v. Burton*, 943 F.2d 1572, 1576 (11th Cir. 1991). When considering these factors, courts afford "a wide range of deference to prison officials acting to preserve discipline and security, including when considering decisions made at the scene of a disturbance." *Fennell v. Gilstrap*, 559 F. 3d 1212, 1217 (11th Cir. 2009) (quotation marks omitted).

        i.        **Defendants Captain Smith and Lieutenant Thomas**

Key has carried his burden of showing a genuine issue of material fact exists as to whether Defendants Smith and Thomas used excessive force against him on July 19, 2018. Defendant Smith affirms by affidavit, "at no time did I use or witness any force used against inmate Key." (Doc. 29-2). Defendant Thomas affirms the exact same. (Doc. 29-4). Yet, Key asserts, under penalty of perjury, both defendants used force against him, while he was fully compliant with their orders to lie face down on his bed, giving rise to a genuine dispute of material fact. *Kingsland v. City of Miami*, 382 F.3d 1220, 1225-26 (11th Cir. 2004); *see also United States v. Stein*, 881 F.3d 853, 858-59 (11th Cir. 2018) (Rule 56 does not require that "an otherwise admissible affidavit be corroborated by independent evidence") (en banc).

Defendants contend that no reasonable jury could believe Key's claim of excessive force because it is not borne out by the record, pointing specifically to "the lack of any documentation of the event" and "that Key did not request sick call until July 20, 2018, not on July 19, 2018, which was the date of the CERT team search." (Doc. 29 at 11). However, Key has specifically stated that he was unable to fill out a sick call request on July 19, 2018, because the prison was on

8

lockdown due to the institutional search. (Doc. 39 at 9). Defendants further aver that they "cannot locate any supporting documents that substantiate inmate Key's claim." (Doc. 29-1 at 2). Yet, the record reflects consistent reference to Key suffering injuries to his back, sides, and buttocks, and that those injuries were caused by the CERT team on July 19, 2018. The record shows that on July 20, 2018, Key submitted a sick call request, stating, "I need an X-ray on my back and sides, I got jumped on by (riot team)! Hard for me to walk or move around period! X-ray other area to[o]." (Doc. 29-3 at 9). The sick call request was collected and reviewed on July 22, 2018, and Key was examined on July 22 for backpain, stating, "My back and side hurts"; "I need a x-ray"; "It's hard to breathe"; I got hit by cert team . . . 3 days ago." (Doc. 29-3 at 10, 17). Key was noted as having swelling, redness, and bruising, with normal lung sounds, (*id*.) and daily wound care was ordered for three wounds to Key's upper left back and pain medicine was prescribed. (*Id*. at 2, 17, 69). The wounds shared measurements of 2 x 4 x 0 to all three areas. (*Id*. at 17). Key was examined for worsening chest pain on July 26, 2018 and stated that the pain started "[a]fter Cert Team was here" and he "was hit in the back several times".[3] (*Id*. at 15). Accordingly, Key's version of the facts is not blatantly contradicted by the record and must be accepted at this procedural stage of the action. *Sears v. Roberts*, 922 F.3d 1199, 1208 (11th Cir. 2019) ("As a general principle, a plaintiff's testimony cannot be discounted on summary judgment unless it is blatantly contradicted by the record, blatantly inconsistent, or incredible as a matter of law, meaning that it relates to facts that could not have possibly been observed or events that are contrary to the laws of nature.") (quoting *Feliciano v. City of Miami Beach*, 707 F.3d 1244, 1253 (11th Cir. 2013)).

---

[3] He was prescribed pain medication and an Albuterol inhaler, and a chest x-ray was ordered. (*Id*. at 65, 66, 67, 68). The current record contains no copy of the x-ray report. And, Defendants do not dispute that x-rays were conducted. Neither does the record contain the orders to transport to Atmore Community hospital, where Key alleges he was taken, nor the medical records from the hospital. And, Defendants do not dispute that Key was evaluated at the local hospital.

> The question on summary judgment is not about which side has offered the most evidence. Instead, that question is simply whether there is "sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Anderson*, 477 U.S. at 249, 106 S. Ct. at 2511. While a plaintiff "may not rest upon the mere allegations or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial," *id*. at 248, 106 S. Ct. at 2510 (quotation marks and alterations omitted), we have long recognized that "[c]ourts routinely and properly deny summary judgment on the basis of a party's sworn testimony," *Price v. Time, Inc*., 416 F.3d 1327, 1345 (11th Cir. 2005).

*Sears v. Roberts*, 922 F.3d 1199, 1207-08 (11th Cir. 2019). "Summary judgment is not a time for fact-finding; that task is reserved for trial." *Sconiers v. Lockhart*, 946 F.3d 1256, 1263 (11th Cir. 2020).

Here, Defendants claim no constitutional violation has occurred because Defendants Smith nor Thomas applied force against Key on July 19, 2018. (Doc. 29 at 12). Key has shown that the CERT team did enter B-Dorm at Holman on July 19, 2019, to conduct an institutional search. Key has argued he was unable to submit a sick call request until the following day due to the "no movement" restriction (or lockdown) in place during institutional searches. Key has shown a sick call request and nursing evaluation sheets that repeatedly reference injuries sustained from being hit by CERT team officers on July 19, 2018. Furthermore, the size and areas of the sustained wounds correspond with the size of a baton or nightstick and areas of the body Key claims to have been struck. Thus, a reasonable jury could credit Key's version of the event. *Cf*., *McCullough v. Antolini*, 559 F.3d 1201, 1202 (11th Cir. 2009) (The Eleventh Circuit has stated district courts should "approach the facts from the plaintiff's perspective because '[t]he issues ... here concern not which facts the parties might be able to prove, but, rather, whether or not certain given facts showed a violation of clearly established law.'" (quoting *Lee v. Ferraro*, 284 F.3d 1188, 1190 (11th Cir. 2002)). If believed, cases in this circuit clearly establish the right of people who pose no safety risk to an officer or one who is compliant to an officer's orders to be free from gratuitous

force. *See Sabastian v. Ortiz*, 918 F.3d 1301, 1308 (11th Cir. 2019) (discussing that the use of force against a defendant "who is under control, not resisting, and obeying commands" is "gratuitous" and "excessive").

Consequently, the competing narratives are an issue of credibility, thus a factual issue, and a court may not grant summary judgment. *Sconiers,* 946 F.3d at 1263 (citing *Mize v. Jefferson City Bd. of Educ.*, 93 F.3d 739, 742-43 (11th Cir. 1996)). For these reasons, it is recommended that summary judgment be **DENIED** as to **Defendants Smith and Thomas**, on the claims of excessive force, at this time.

### ii. Defendant Warden Stewart

As to the allegations against Defendant Stewart that she failed to protect him from the alleged use of force, she avers "[she] was not present when the CERT TEAM entered the facility." (Doc. 29-1 at 1). Key has failed to allege facts sufficient to show otherwise or even dispute Defendant Stewart's affirmation.

"It is well established in this Circuit that supervisory officials are not liable under § 1983 for the unconstitutional acts of their subordinates on the basis of *respondeat superior* or vicarious liability." *Hartley v. Parnell*, 193 F.3d 1263, 1269 (11th Cir. 1999) (internal quotation marks and citation omitted). If a supervisor's liability cannot be established based on the supervisor's personal participation in the complained acts, a plaintiff must show a causal connection between the supervisor's actions and the alleged constitutional deprivation. *Brown v. Crawford*, 906 F.2d 667, 671 (11th Cir. 1990).

> A causal connection may be established when: 1) a "history of widespread abuse" puts the responsible supervisor on notice of the need to correct the alleged deprivation, and he fails to do so; 2) a supervisor's custom or policy results in deliberate indifference to constitutional rights; or 3) facts support an inference that the supervisor directed the subordinates to act unlawfully or knew that the subordinates would act unlawfully and failed to stop them from doing so.

11

*Valdes v. Crosby*, 450 F.3d 1231, 1237 (11th Cir. 2006) (citing *Cottone v. Jenne*, 326 F.3d 1352, 1360 (11th Cir. 2003)). A custom is established by showing "a longstanding and widespread practice [such that it] is deemed authorized by the policymaking officials because they must have known about it but failed to stop it." *Brown v. City of Fort Lauderdale*, 923 F.2d 1474, 1481 (11th Cir. 1991) (A custom requires showing a practice so settled and permanent that it takes on the force of law). "The deprivations that constitute widespread abuse sufficient to notify the supervising official must be obvious, flagrant, rampant and of continued duration, rather than isolated occurrences." *West Tillman*, 496 F.3d 1321, 1329 (11th Cir. 2007) (quotation marks and citations omitted).

The record is void of facts or suggestion that Defendant Stewart personally participated in the July 19, 2018, CERT team search of B-Dorm, beyond requesting the CERT team conduct an institutional search. Thus, to establish his claim, he must show a causal connection between the supervisory defendant and the alleged unconstitutional conduct. Review of Key's complaint reveals that he fails to go beyond listing Defendant Stewart as warden, demanding merely that "it's her duty [as warden] to make sure all inmates [are kept safe and provided care when needed.]" (Doc. 5 at 5). Furthermore, the record indicates that the CERT team was under the supervision of the State CERT Coordinator and/or Team Commander to accomplish the goals with absolute minimum force. (Doc. 29-1 at 1). And, Defendant Stewart avers, "at no time will or have I observed, allowed or permitted any abuse, assault or excessive force to any person." (*Id*. at 2). Thus, Key has failed to show a causal connection to the alleged use of force and Defendant Stewart.

To the extent Key alleges Defendant Stewart is liable for failing to protect him by intervening in the attack, his claim is meritless. Key alleges that Defendant Stewart ordered the CERT team to conduct the search at Holman, and "if Warden Stewart would have been present,

she could have intervene[d] and, protect plaintiff from being beat[en] an[d] physically harmed by the A.D.O.C. Cert team members LT Thomas, Captain Smith aka Pops." (Doc. 39 at 4).

The test put forth in this Circuit to establish if liability may attach to an officer who fails to intervene in an inmate-on-inmate fight is whether: (1) the inmate's physical assault created a substantial, objective risk of injury, (2) of which a defendant is subjectively aware, (3) the defendant was in a position to intervene, and (4) the defendant did not respond reasonably to the risk of injury. *Johnson v. Boyd*, 568 F. App'x 719, 724-25 (11th Cir. 2014). "Prison correctional officers may be held directly liable under § 1983 if they fail or refuse to intervene when a constitutional violation occurs in their presence." *Terry v. Bailey*, 376 F. App'x 894, 896 (11th Cir. 2010) (per curiam) (citing *Ensley v. Soper*, 142 F.3d 1402, 1407 (11th Cir. 1998)). In order for liability to attach, however, "the officers must have been in a position to intervene." *Id*. The inmate plaintiff bears the burden of demonstrating that the correctional officer defendant "was in a position to intervene but failed to do so." *Ledlow v. Givens*, 500 F. App'x 910, 914 (11th Cir. 2012) (per curiam) (citing *Hadley v. Gutierrez*, 526 F.3d 1324, 1330-31 (11th Cir. 2008)). Here, it is undisputed that Defendant Stewart was not present at the time of the incident subject of this complaint; thus, she cannot be liable for failing to intervene.

Consequently, Key has failed to carry his burden of showing a genuine issue of material fact exists as to whether or not Defendant Stewart failed to protect him or intervene. Thus, it is recommended that summary judgment be **GRANTED** in favor of Defendant Stewart as to claims of excessive force, failure to protect, and failure to intervene.

        **iii.**    **Unidentified CERT TEAM members**

Key includes in the style of this action "Alabama Department of Corrections CERT Members" as a defendant. (Doc. 5 at 1). However, Key fails to list the "Alabama Department of

Corrections CERT Members" as a party in the complaint, nor does he articulate a claim against them. Without facts connecting CERT Team members personally to his claims, Key cannot establish liability. *LaMarca v. Turner*, 995 F.2d 1526, 1536 (11th Cir. 1993) (A plaintiff must connect an official's act or omission to the alleged constitutional deprivation to establish liability in § 1983). Consequently, Key has failed to establish a causal connection between these possible defendants as members of the CERT Team and the alleged harm suffered, and a reasonable jury would not be able to return a verdict for Key on the issue of excessive force against them. Accordingly, to the extent Key attempts to sue the "Alabama Corrections CERT Members" as a team or unit, his claim fails.

### 2. Denial and/or Delay of Medical Care

The Eighth Amendment prohibits indifference to a convicted prisoner's serious medical needs so deliberate that it "constitutes the unnecessary and wanton infliction of pain." *Estelle v. Gamble*, 429 U.S. 97, 104, 97 S. Ct. 285, 50 L. Ed. 2d 251 (1976). "To prevail on a claim of deliberate indifference, a plaintiff must show: (1) a serious medical need; (2) defendant's deliberate indifference to that need; and (3) causation between the defendant's indifference and the plaintiff's injury." *McDaniels v. Lee*, 405 F. App'x 456, 458 (11th Cir. 2010) (citing *Mann v. TaserInt'l, Inc.*, 588 F.3d 1291, 1306-07 (11th Cir. 2009)). To satisfy the first objective element, Key must prove his condition was, in fact, a serious medical need. "A 'serious medical need' is one that is diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would recognize the need for medical treatment." *Pourmoghani-Esfahani v. Gee*, 625 F.3d 1313, 1317 (11th Cir. 2010) (internal quotations omitted). "To satisfy the subjective element of [a] deliberate indifference [claim, a] ... Plaintiff must prove three subparts: (1) subjective knowledge of a risk of serious harm; (2) disregard of that risk; (3) by conduct that is more than [gross] negligence."

*Bozeman v. Orum*, 422 F.3d 1265, 1272 (11th Cir. 2005) (internal quotations omitted). A medical need may be considered serious if a delay in treating it makes it worse. *Danley v. Allen*, 540 F.3d 1298, 1310 (11th Cir. 2008). "In either of these situations, the medical need must be 'one that, if left unattended, pos[es] a substantial risk of serious harm.'" *Farrow v. West*, 320 F.3d 1235, 1243 (11th Cir. 2003) (quoting *Taylor v. Adams*, 221 F.3d 1254, 1258 (11th Cir. 2000)).

"Delay in access to medical attention can violate the Eighth Amendment ... when it is tantamount to unnecessary and wanton infliction of pain." Hill v. Dekalb Reg'l Youth Det. Ctr., 40 F.3d 1176, 1187 (11th Cir. 1994), *overruled in part on other grounds by Hope v. Pelzer*, 536 U.S. 730, 739 n. 9, 122 S. Ct. 2508, 153 L. Ed. 2d 666 (2002) (internal citations and quotation marks omitted). However, to succeed in proving that the delay of medical care rose to a constitutional violation, Plaintiff "must place verifying medical evidence in the record to establish the detrimental effect of delay in medical treatment to succeed...." Consequently, delay in medical treatment must be interpreted in the context of the seriousness of the medical need, deciding whether the delay worsened the medical condition, and considering the reason for delay. *Id.* at 1188-89 (internal citations omitted) (footnotes omitted); *see also, Mann v. Taser Int'l, Inc.*, 588 F.3d 1291, 1307 (11th Cir. 2009). "To survive summary judgment, a plaintiff must show that the delay attributable to the defendant's indifference likely caused the plaintiff's injury." *Geobert v. Lee Cnty.*, 510 F.3d 1312, 1329 (11th Cir. 2007).

Here, Key challenges that Defendants denied him medical care following the July 19, 2018 incident. Key alleges that he was beaten and "left on [his] assigned bed suffering in painful attacks." (Doc. 5 at 4). However, he further alleges that after the incident, he crawled to the prison phone and called his mother to tell her about the attack. He also requested she call and speak to someone at the prison. Key asserts that his mom called and spoke with Warden Raybon and, within 30

15

minutes of their conversation, officers came and escorted him to the health care unit. Thus, based on Key's allegations, he received medical treatment following the alleged attack.

The record further confirms that Key was evaluated on July 22, 2018, where the nursing staff observed swelling, redness, bruising, tenderness, and three wounds to Key's upper back/left shoulder that were cleansed and treated with antibiotic ointment. (Doc. 29-3 at 10). It is further indicated at this evaluation that Key's lung sounds were normal. (*Id.*). Key does not dispute the findings and observations that are noted on the report. Key does claim that he was treated for lung issues at a free world hospital but concedes it was days after the incident, which is supported by the July 26, 2018, medical record, noting Key complained of breathing difficulties that had worsened since the incident (at that time a chest x-ray was ordered and pain medication and inhaler were prescribed). Accordingly, the facts indicate that following the attack, Key suffered pain, swelling, bruising, redness, and three wounds to his shoulder. It is these injuries that must be evaluated for "seriousness".

In evaluating the seriousness of Key's medical need, the cases below lend guidance.

In *Fernandez v. Metro Dade Police Dep't*, 397 F. App'x 507 (11th Cir. 2010), the Eleventh Circuit reversed the district court's finding of a serious medical need where the arrestee suffered a bloody nose and mouth, which lasted over five minutes, facial bruising, pain, disorientation, and blood clogs in his nose. The court determined the injuries did not create an objectively serious medical need either at the time of the arrest or at the time he finally received medical attention, where the only treatment necessary was aspirin, which was requested by the arrestee for a headache.

In *Martin v. Gentile*, 849 F.2d 863 (4th Cir. 1998), the plaintiff suffered a cut over one eye, a quarter-inch piece of glass embedded in his palm, and bruises on his shoulders and elbows. The court found the cut over the plaintiff's eye was small and had stopped bleeding by the time he

16

appeared at arraignment (approximately four hours later), and the sliver of glass in his palm was undoubtedly uncomfortable but was not a serious injury. Once seen in the emergency room, the plaintiff's injuries were described as minor and required neither stitches nor pain medication. Without evidence that the delay in treatment exacerbated the injuries, the court found there was no serious medical need shown and no constitutional violation.

In *McKnight v. Garriott*, No.: 3:15-cv-159-J-39JRK, 2018 WL 6019706, 2018 U.S. Dist. LEXIS 195489 (M.D. Fla. Nov. 16, 2018), the plaintiff alleges he was beaten and hogtied while handcuffed and suffered bleeding from his face, wrists and shoulder, swelling to the left side of his face, a significant abrasion to his head, as well as head, torso and back pain, and severe headaches. The plaintiff was left hogtied and bleeding for an hour before receiving medical attention. When examined, the blood and dirt were cleaned from the plaintiff's wounds, Neosporin was applied, his finger was bandaged, and an ice pack was given. Plaintiff's wounds healed without sutures or surgical intervention. The court concluded that the plaintiff failed to demonstrate an objectively serious medical need because the plaintiff's injuries were minor, did not require treatment from the hospital, and he was able to be released to the institution for confinement. The court further concluded that a reasonable officer in the defendants' shoes would not have recognized a serious medical need requiring immediate attention and qualified immunity was granted.

Here, Key has not claimed that he complained to Defendants of pain, that he screamed in pain or yelled for help, or that he was bleeding. Indeed, Key fails to describe suffering any observable symptoms experienced at that time of the attack, nor how long he endured any symptom(s), nor that he suffered any emergent or urgent medical need. Although Key's injuries likely did cause pain and discomfort, there is no available evidence to indicate that the delay in

17

treatment exacerbated his injuries to the point of risking his health or safety. Instead, the medical evidence produced shows that Key did not need surgical intervention, stitches, or care beyond antibiotic ointment and Motrin; thus, it would not have been apparent to a reasonable officer at the time of the incident that Key was suffering from a life threatening or serious injury where a delay would detrimentally exacerbate the medical problem. *Hill*, 40 F.3d 1176, 1187-89; *but cf., Aldridge v. Montgomery*, 753 F.2d 970 (11th Cir. 1985) (serious medical need was found where plaintiff suffered one and half inch cut over right eye and continued to bleed for two hours (forming a pool of blood on the floor the size of two handfuls) before receiving medical treatment, where he received six stitches, ice packs, and aspirin, which defendants failed to provide). Any complications, i.e., breathing issues, that may have later arisen would not have been obvious to an officer at the time, and Key does not allege that he ever complained to any officer that he had trouble breathing, was in pain, or needed any medical treatment. To the extent Key may have suffered a more serious medical need than what is demonstrated in Key's pleading or the current record, it is Key's burden to have put forth such factual allegations and/or evidence. *Farrow*, 320 F.3d at 1243 ("[A] plaintiff bears the burden of demonstrating the existence of an 'objectively serious medical need.'").

As to Warden Stewart, Key as failed to allege that she was ever alerted to a medical need and denied him treatment. Furthermore, he has failed to provide factual allegations causally connecting to her to any denial or delay of medical care. Thus, Key has failed to establish that Warden Stewart was deliberately indifferent to a medical need.

Considering all the circumstances surrounding the treatment that Key received for his medical problems, along with Key's vague and conclusory allegations regarding his injuries suffered, the Court cannot conclude that any of the Defendants were deliberately indifferent to

Key's medical issues. Thus, Key has failed to establish the needed elements of his denial of medical care claim. If a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which the party will bear the burden of proof at trial," Rule 56(c) mandates that summary judgment be entered against the nonmovant. *Celotex Corp.,* 477 U.S. at 322.

For these reasons, it is recommended that summary judgment be **GRANTED** in favor of all Defendants on Key's claim for denial of medical care.

### IV.   CONCLUSION

Based on the foregoing, the undersigned recommends that summary judgment should be **GRANTED** in favor of: **(1)** all Defendants as to the Eighth Amendment denial of medical care claim related to July 19, 2018, and **(2)** Defendant Stewart as to the Eighth Amendment excessive force claim. It is further recommended that summary judgment should be **DENIED** as to the Eighth Amendment excessive force claim related to July 18, 2019, asserted against Defendants Smith and Thomas.

The instructions that follow contain important information regarding objections to the report and recommendation of the Magistrate Judge.

### NOTICE OF RIGHT TO FILE OBJECTIONS

A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party who objects to this recommendation or anything in it must, within fourteen (14) days of the date of service of this document, file specific written objections with the Clerk of this Court. See 28 U.S.C. § 636(b)(1); FED.R.CIV.P. 72(b); S.D. ALA. GenLR 72(c). The parties should note that under Eleventh Circuit Rule 3-1, "[a] party failing to object to a magistrate judge's findings or recommendations contained in a report and recommendation in

accordance with the provisions of 28 U.S.C. § 636(b)(1) waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions if the party was informed of the time period for objecting and the consequences on appeal for failing to object.  In the absence of a proper objection, however, the court may review on appeal for plain error if necessary in the interests of justice." 11th Cir. R. 3-1.  In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the Magistrate Judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the Magistrate Judge is not specific.

     **DONE** this the 15th day of February 2022.

     /S/ Katherine P. Nelson
     **UNITED STATES MAGISTRATE JUDGE**